J. Raymond Amyot, J.
The factual background which gives rise to this action is not in contest and from the papers before the court on the motion to dismiss it is established that on August 20, 1971 the defendant Warner Pruyn Division, Finch Pruyn Sales Inc. (hereinafter, Warner Pruyn) sold a refrigerator to Frederick D. and Margaret C. Ross of Hudson Falls, New York. On October 15, 1973 Mr. and Mrs. Ross sold their Hudson Falls residence, together with the refrigerator in question, to Claude D. and Jo Ann Ross Mead. On August 29, 1975 (more than four years after the sale of the refrigerator to Mr. and Mrs. Ross) a fire consumed the Mead residence while it was being occupied by Mr. and Mrs. Mead and their three infant children, Claude D. Mead, Jr., Timothy J. Mead and Scott A. Mead. As a result of that conflagration the entire Mead family died of asphyxiation and administrators have been appointed for the estates of the decedents.
Alleging that defects in the refrigerator were responsible for the fire, a single suit consisting of 30 separate causes of action *784 has been commenced by the administrators against the manufacturer, the distributors and the retailer of the refrigerator. The complaint sounds in negligence, breach of warranty, and strict product liability.
The defendant Warner Pruyn now moves to dismiss the causes of action based on warranty and strict product liability, contending that the warranty causes of action are barred by the four-year Statute of Limitations, and that the allegations seeking to hold the retailer in strict product liability fail to state a cause of action.
With regard to strict product liability, the moving defendant contends that in this State there is no such cause of action against the vendor of a defective product. It is conceded that since Codling v Paglia (32 NY2d 330) the State of New York permits recovery against the manufacturer of a defective product based on the theory of strict product liability. It is urged, however, that neither Codling nor its progeny has extended that theory to authorize recovery against the vendor. Codling v Paglia (supra) was a suit against the manufacturer only. The court there was not called upon to embrace or to reject the rule imposing strict liability on any other than the manufacturer and failure there to adopt a rule holding liable the vendor does not constitute rejection of that rule. That proposition was not considered and was not decided by Codling. The court’s attention has been directed to no reported case in this State which permits recovery against the retailer alone on the theory of strict product liability. (See dissent of Justice Greenblott in DeCrosta v Reynolds Constr. & Supply Corp., 49 AD2d 476, 481-484.) Recovery was allowed in Micallef v Miehle Co., Div. of Miehle-Goss Dexter (39 NY2d 376) and in Velez v Craine & Clark Lbr. Corp. (33 NY2d 117) wherein the defendants made the ultimate sale which put the product into use where its defect resulted in the plaintiffs’ injury but in those cases the defendant was not only the seller but was also the manufacturer or the distributor. DeCrosta v Reynolds Constr. & Supply Corp. (supra) which holds that there is no strict product liability cause of action available to a purchaser against his vendor for the reason that the purchaser is able to protect himself through the terms of his contract and is in position to extract such warranties as he desires, is not dispositive of the factual situation here under consideration which deals with the rights and obligations of persons not in privity.
*785 Pointing out the social and economic trends which compelled the adoption of the strict product liability theory, Codling v Paglia (32 NY2d 330, 341, supra) said: "Justice and equity would dictate the apportionment across the system of all related costs — or (sic) production, of distribution, of postdistribution liability. Obviously, if manufacturers are to be held for financial losses of nonusers, the economic burden will ultimately be passed on in part, if not in whole, to the purchasing users. But considerations of competitive disadvantage will delay or dilute automatic transferral of such added costs. Whatever the total cost, it will then be borne by those in the system, the producer, the distributor and the consumer. Pressures will converge on the manufacturer, however, who alone has the practical opportunity, as well as a considerable incentive, to turn out useful, attractive, but safe products. To impose this economic burden on the manufacturer should encourage safety in design and production; and the diffusion of this cost in the purchase price of individual units should be acceptable to the user if thereby he is given added assurance of his own protection.”
The court’s reference here to "system”, "distribution” and "distributor” seems in the total context of the decision to include the retailer or vendor. The same social and economic considerations expressed by the court in Codling which led to the recognition of the cause of action against the manufacturer are equally persuasive when considering the availability of the same remedy in favor of an innocent injured person against the retailer whose commercial transaction was the final link in the chain which placed the defective product in position to inflict harm. The imposition of this responsibility will bring from the retailer further pressure on the manufacturer for "safety in design and production”, all to the protection of the public.
The California courts have led the way in recognizing the viability of such cause of action against the retailer (see Vandermark v Ford Motor Co., 61 Cal 2d 256), and many other States as well as Federal jurisdictions have adopted the same rule. (See 13 ALR3d 1099; 2 Frumer and Friedman, Products Liability, § 19A[1] and cases cited in accord, n. 2.) Section 402A of the Restatement, Torts 2d, which is entitled "Special Liability of Seller of Product for Physical Harm to User or Consumer” articulated the strict product liability theory as it was evolving in the courts of the nation. Although *786 the title of that section refers to the "seller”, it is clear from comment f of that section that it applies to manufacturers, wholesalers, distributors and retailers. The rule laid down in the Restatement requires less by way of proof than the rule adopted in this State by Codling v Paglia (32 NY2d 330, supra). It was that less stringent criteria to which Judge Cooke referred in Micallef v Miehle Co., Div. of Miehle-Goss Dexter (39 NY2d 376, 388, supra), when he said that he and Judge Fuchsberg would prefer to adopt the rule as embodied in section 402A of the Restatement, Torts 2d. That did not constitute a rejection by the Court of Appeals of the strict product liability theory as applied to retailers.
The clear intent of the rule permitting recovery on the theory of strict product liability "is to protect a party injured —be he purchaser, user or innocent bystander — by a defective product”. (Rivera v Berkeley Super Wash, 44 AD2d 316, 321, affd sub nom. Victorson v Bock Laundry, 37 NY2d 395.) That protection will be diluted if the injured party is denied the right to recover from the retailer, who, in some instances, may be the only defendant available to a plaintiff.
That branch of the defendant’s motion addressed to the causes of action against the retailer alleged in strict product liability is denied.
The defendant’s motion to dismiss the causes of action alleging breach of warranty as barred by the applicable Statute of Limitations is in effect assertion of and reliance upon an affirmative defense (CPLR 3018, subd [b]) which places the burden of proof upon the party asserting that defense. (Byer v Gilson, 286 App Div 855.) Section 2-725 of the Uniform Commercial Code is the limiting statute relied upon by the moving defendant. That section provides in subdivision (1) that an action for breach of warranty "must be commenced within four years after the cause of action has accrued.” Subdivision (2) of that section defines that the cause of action accrues when tender of delivery is made except when the warranty is expressly extended to future performance of the goods.
The moving defendant contends that the plaintiffs’ causes of action on warranty accrued on the date of sale. The moving papers do not set forth the date when delivery was tendered which under the controlling statute was the earliest date when the plaintiffs’ breach of warranty causes of action could have accrued. The plaintiffs, opposing the motion, contend that they do not know and have no way of knowing the date *787 when delivery was tendered or whether there were explicit extensions of the warranty to future performance. They ask that the motion be denied so that it may be determined by appropriate discovery proceedings whether the suit is timely.
The moving defendant’s affidavit fails to establish prima facie proof that the time for the plaintiffs to sue their causes of action in warranty has elapsed. That proof is peculiarly within the knowledge of the moving defendant. They do not deny that they sold the refrigerator nor do they allege that they do not know the date of delivery. It does not appear in the pleadings or by the affidavits submitted on the motion that the Statute of Limitations governing these causes of action has expired. There is, therefore, no shifting of the burden to the plaintiffs to establish facts to show that these causes of action fall within the exception of the limiting statute as was required in Doyon v Bascom (38 AD2d 645). The pleading process should proceed and, if so advised, the moving defendant may allege the affirmative defense in its answer. The burden of proof then will remain with the defendant to establish that affirmative defense.
That branch of the defendant’s motion addressed to the causes of action based on warranty is denied.