In re WEDTECH CORPORATION, f/k/a Welbilt Electronics Die Corp., Debtor.

WEDTECH CORPORATION, f/k/a Wedtech Electronics Die Corp., Plaintiff,

v.

Steven DENLINGER, Defendant.

Bankruptcy No. 86B–12366 (HCB). Adv. No. 90A–6216.

United States Bankruptcy Court, S.D. New York.

Nov. 13, 1990.

Hayt, Hayt & Landau by Aaron R. Cahn, Andrew I. Silfen, Great Neck, N.Y., for debtor.

Williams & Connolly by Robert L. Weinberg, H. Douglas Owens, Washington, D.C., for defendant Steven Denlinger.

## DECISION

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

In this adversary proceeding, Steven Denlinger ("Denlinger" or the "Defendant") seeks, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, dismissal of the first amended complaint (the "Amended Complaint") of Wedtech Corporation, the debtor and debtor in possession herein ("Wedtech" or the "Plaintiff"). The Amended Complaint requests an order under 11 U.S.C.A. § 544(a), (b) (1989), incorporating section 720 of New York's Business Corporation Law, N.Y. Bus.Corp.L. § 720 (McKinney 1990), ("Section 720") directing Denlinger to return sums paid to him by Wedtech for lobbying services.

In this case, we are asked to revisit significant issues we have already discussed at length in a previous decision in this case, *Wedtech Corp. v. Nofziger (In re Wedtech Corp.)*, 88 B.R. 619 (Bankr.S.D.N.Y.1988).

I

A

On December 15, 1986, Wedtech filed a petition for reorganization under Chapter 11 of Title 11 of the United States Code, 11 U.S.C.A. § 1101 *et seq.* (1989), (the "Code"). Prior to bankruptcy, Wedtech operated as a military contractor. Pursuant to the Small Business Administration Section 8(a) program allowing qualified minority businesses to receive government contracts without competitive bidding, Wedtech actively sought and was awarded various Defense Department contracts. Since bankruptcy, many employees and agents of Wedtech have been charged with or suspected of illegal acts in connection with lobbying activities performed at Wedtech's behest. This adversary proceeding concerns the activities of one of those persons Wedtech hired to facilitate procurement of valuable Section 8(a) defense contracts.

On July 18, 1990, Wedtech filed a complaint (the "Original Complaint") initiating this adversary proceeding and seeking the return of $185,000 on the ground that Denlinger was retained by Wedtech in violation of law and government regulations to influence government employees to cause certain government contracts to be given to Wedtech. Original Complaint ¶¶ 10, 11. The Original Complaint split the $185,000 into two claims of $175,000 and $10,000 respectively. Denlinger moved under Rule 12(b)(6) to dismiss the Original Complaint. On September 10, 1990, a hearing was held on the Defendant's motion to dismiss. At

that hearing, the Court issued a bench order granting Denlinger's motion to dismiss the Original Complaint for failure to plead that Denlinger had the requisite *mens rea* under Section 720 [1], subject to Wedtech filing, by September 19, 1990, an amended complaint correcting the defect. Tr. 13:12–15.[2] On September 12, 1990, Wedtech filed an amended complaint (the "Amended Complaint").

Wedtech's first claim for relief (the "First Claim") under its Amended Complaint includes the following allegations:

1) Denlinger is the sole owner of Enterprise 2000 Corp., a/k/a Enterprise 2000 and Enterprise Development Corp, *Amended Complaint* ¶ 10;

2) While employed by the Latin American Manufacturers Association ("LAMA"), Denlinger received "consulting fees" from Wedtech, the fees were not disclosed to LAMA and were intended to "unlawfully induc[e] Denlinger to improperly influence government employees", *id.* at ¶ 11;

3) In exchange for "financial inducements," Denlinger provided Wedtech with "secret and privileged" information to aid Wedtech in procuring government contracts, *id.* at ¶ 12;

4) Denlinger attempted to "improperly and/or unlawfully influence" Congressman Parrin Mitchell, Chairman of the House Committee on Small Business, to terminate then on-going inquiries into allegedly illegal activities conducted by Wedtech to obtain government contracts, *id.* at ¶¶ 13, 14;

5) Wedtech transferred $175,000 to Denlinger, or to Enterprise 2000, during this period as consideration for the above services, *id.* at ¶ 15;

6) The transactions just described were illegal and Denlinger was paid for performing them, *id.* at ¶ 16;

7) Section 544(b) of the Code authorizes this suit and there exists at least one unsecured creditor holding an allowable claim under section 502 of the Code, *id.* at ¶¶ 17–19;

8) The payments to Denlinger constitute a violation of the fiduciary duty owed by Wedtech officers, an unlawful transfer, and a waste of corporate assets, *id.* at ¶ 20;

9) Denlinger as a transferee of the above-mentioned payments is liable "under applicable non-bankruptcy law and particularly Section 720" for the funds unlawfully transferred to him, *id.*; and

10) Therefore, Denlinger is liable under section 544(a) and (b) for the sum of $175,000 plus interest from the date of the transfer, *id.* at ¶ 21.

The First Claim contained no plea that Denlinger knew that Wedtech's transfer of the $175,000 to him was unlawful. Wedtech's second claim for relief (the "Second Claim") also invokes section 544(a) and (b) of the Code. The Second Claim does not incorporate any of the previous allegations, but recites the following allegations:

1) Wedtech transferred to Denlinger $10,000 for the purpose of making an illegal payment to H. Robert Salvidar, a senior executive in the Small Business Administration, in order to influence Salvidar to assist Wedtech in procuring government contracts, *id.* ¶¶ 23, 24;

2) After Salvidar refused to accept the "financial inducement," Denlinger retained the $10,000, *id.* at ¶¶ 25–26;

3) The "payment" made by Wedtech to Denlinger was for illegal purposes and constituted a violation of the fiduciary duty owed by Wedtech's officers, *id.* at ¶ 27;

4) As transferee of the payment, Denlinger is liable under Section 720, *id.*;

5) Denlinger has been "convicted, by plea or otherwise, for crimes arising out

---

**1.** At the hearing, it became clear that Wedtech had intended to include in the Original Complaint allegations of a criminal conviction against Denlinger and that it believed the conviction would be sufficient to satisfy the knowledge requirement of section 720 of New York's Business Corporation Law. Due to law office

failure, however, the complaint served and filed contained no such allegation. Tr. 6:10–25.

**2.** Citations to "Tr." refer to the transcript of the hearing held on September 10, 1990; citations to "H." refer to the transcript of the hearing held on October 22, 1990.

of the conduct described herein", *id.* at ¶ 28; and

6) Therefore, Denlinger is liable under sections 544(a) and (b) under the Code to Wedtech for $10,000 plus interest, *id.* at ¶ 29.

As a result of his unsuccessful attempt to persuade Salvidar to accept the $10,000, Denlinger pleaded guilty to conspiring with Wedtech to supplement the salary of a government employee. Tr. 7:20–24. Unlawful supplementation of a government employee's salary is a misdemeanor under 18 U.S.C. § 209.[3]

### B

In arguing that the Amended Complaint fails to state a claim, Denlinger makes several arguments. First, the Amended Complaint fails to allege that Denlinger, as transferee, had the requisite knowledge of the illegality of the transfer as required by Section 720. As to the First Claim, Denlinger contends that the Amended Complaint does not allege knowledge at all: it neither states that Denlinger knew that the "consulting fees" were unlawful transfers nor pleads that Denlinger was convicted of a crime arising out of the transaction with Wedtech which would *a fortiori* establish the requisite intent under Section 720. As to the Second Claim, Denlinger submits that the conduct Wedtech describes as the basis for Denlinger's criminal conviction is of a much graver nature than the misdemeanor to which Denlinger pleaded guilty. Specifically, the conduct described in paragraph 24 of the Amended Complaint contains allegations of bribery rather than unlawful salary supplementation. Alternatively, Denlinger argues that the elements of a section 209 offense, 18 U.S.C.A. § 209 (1989) ("Section 209"), for which Denlinger was convicted, do not require proof that the defendant knew of the unlawfulness of her acts; therefore, a conviction under that section cannot satisfy the knowledge of illegality requirement in Section 720.

Second, Denlinger points to the failure of Wedtech to name a director or officer of Wedtech in the Amended Complaint as grounds for dismissal. Denlinger submits that New York state case law does not allow suits against transferees alone absent the joinder of one or more corporate officers or directors responsible for the transaction.

Third, Denlinger seeks dismissal on the ground that Wedtech lacks standing because it fails to allege the existence of a creditor who could have voided the transfer at the time of its occurrence. Denlinger argues that Section 720 requires Wedtech to allege the existence of a judgment creditor.

Fourth, Denlinger argues that Wedtech's failure to allege a date for the challenged transfer in the Second Claim warrants dismissal. Denlinger believes that Wedtech must allege acts which occurred within the applicable statute of limitations.

Fifth, Denlinger submits that dismissal is required because the Amended Complaint does not allege harm to Wedtech's creditors as a result of the alleged transfers to Denlinger.

Sixth, Denlinger argues that no predicate exists for invoking section 544(a) and accordingly any claim resting on that section should be dismissed. According to Denlinger, section 544(a) provides for the avoidance of transfers by or on behalf of a creditor who became such on the day of bankruptcy. Since the transfers to Denlinger presumably took place prior to December 15, 1986, Wedtech's petition date, no claim can be stated under section 544(a).

### II

A motion under Rule 12(b)(6) of Civil Procedure, made applicable in bankruptcy proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure, tests the formal legal sufficiency of the complaint. The "[d]ismissal of a complaint for failure to state a claim is a 'drastic step'," *Meyer v. Oppenheimer Management Corp.*, 764

---

**3.** Section 209 of Title 18 makes it a misdemeanor to supplement the salary of a government employee. 18 U.S.C. § 209 (1982). Under section 371 of Title 18, a conspiracy to commit a misdemeanor remains only a misdemeanor. 18 U.S.C. § 371 (1982).

F.2d 76, 80 (2d Cir.1985), and disfavored by the courts, 2A *Moore's Federal Practice* ¶ 12.07 [2.–5] at 12–63 (2d ed.1985). For purposes of the motion, the factual allegations of the complaint are taken as true, *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977), the complaint is to be liberally construed in favor of the plaintiff, *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969), and the complaint should not be dismissed unless the plaintiff could prove no set of facts which would entitle her to some relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). At all time, the moving party retains at all times the burden of demonstrating that the complaint does not state a claim upon which relief may be granted. *See Cutter Realty Group, Inc. v. Schiraldi (In re Schiraldi),* 116 B.R. 359, 361 (Bankr.D. Conn.1990).

## III

## THE FIRST CLAIM

■ The face of Section 720 clearly establishes that liability cannot attach to a transferee without knowledge of unlawfulness:

> (a) An action may be brought against one or more directors or officers of a corporation to procure a judgment for the following relief:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (2) To set aside an unlawful conveyance, assignment or transfer of corporate assets, *where the transferee knew of its unlawfulness.*

N.Y.Bus.Corp.L. § 720(a) (McKinney Supp. 1990) (emphasis added). Here, the First Claim contains no plea that Denlinger knew the unlawfulness of Wedtech's $175,000 transfer and, consequently, fails to state a cause of action under Section 720. It is well-settled that dismissal of a complaint, although extreme, is appropriate where the complaint lacks an allegation necessary to the cause of action. *See Sarnecky v. Ches-*

*sick (In re Chessick),* 116 B.R. 28, 30 (Bankr.D.Conn.1990); 2A *Moore's Federal Practice* ¶ 12.07[2.–5] at 12–68 (2d ed. 1985).

The absence of a knowledge allegation in the First Claim is highlighted by the presence in the Second Claim of the paragraph alleging criminal convictions arising out of the conduct described in the Second Claim.[4] *See Amended Complaint* ¶ 28. In other cases, a plea of a criminal conviction has been held to plead the requisite knowledge under Section 720. *See, e.g., Nofziger,* 88 B.R. at 625–26. In *Podell & Podell v. Feldman (In re Leasing Consultants Inc.),* 592 F.2d 103, 5 Bankr.Ct.Dec. (CRR) 34, Bankr.L.Rep. (CCH) ¶ 76,040 (2d Cir. 1979), the Second Circuit affirmed the recovery by a trustee in bankruptcy from a transferee under Section 720. The transferee, a Congressman, had pleaded guilty to conspiring to defraud the United States, *see* 18 U.S.C. § 371, and to violating the federal conflict of interest statute, *see* 18 U.S.C. § 203, as a result of illegal transfers from the bankrupt corporation. The knowledge requirement of Section 720 was satisfied by the conviction because the Second Circuit found that the transferee's criminal participation in the unlawful transfer sufficient to state a claim under Section 720. 592 F.2d at 109–10. Likewise, in *Nofziger,* we held that a plea alleging the transferee suffered a criminal conviction as a result of the alleged unlawful conveyance satisfied Section 720's knowledge requirement.

In contrast, in this case, the Amended Complaint pleads Denlinger was paid for performing acts alleged to be illegal, but contains no plea that he knew the acts or payments were unlawful. Moreover, the Amended Complaint does not plead a criminal conviction as a result of Denlinger's activities described in the First Claim. Such a plea of a conviction could support an inference that Denlinger was a criminal participant in the allegedly unlawful conveyance, thereby taking Denlinger out of the zone of interests to be protected by

---

**4.** There is no indication in the Amended Complaint that the knowledge allegation in the Second Claim is somehow incorporated or covers the transactions described in the First Claim.

Section 720's knowledge requirement, *see Leasing Consultants,* 592 F.2d at 109–10 (the wronged corporation is entitled, under Section 720, to follow its unlawfully diverted property and retrieve it until it comes into the hands of a bona fide purchaser for value), and allowing the First Claim to withstand a motion to dismiss.

■ In addition, Wedtech was not without notice of the defect. At the hearing on the Original Complaint, the Court advised Wedtech that the failure to plead knowledge would be fatal. The Court ordered Denlinger's motion to dismiss granted unless an amended complaint was filed curing the knowledge defect. Tr. 13:12–15. Although given an opportunity to cure the defect, Wedtech filed an amended complaint which did not even attempt to cure the defect in the First Claim. Since Wedtech has been given ample latitude and opportunity by this Court to file a legally sufficient complaint, it is not unreasonable to dismiss the First Claim for its continuing failure to plead knowledge under Section 720.

## THE SECOND CLAIM

### A

■ The Second Claim does not suffer the same infirmity as the first. In the Second Claim, Wedtech pleads that Denlinger has been "convicted, by plea or otherwise, for crimes arising out of the conduct described herein." *Amended Complaint* ¶ 28. Denlinger argues that this allegation is insufficient to satisfy the knowledge requirement of Section 720 because knowledge of the illegality of the acts is not a requirement under Section 209. According to Denlinger, Section 209 requires only a gift to, or receipt by, an officer or employee of the executive branch or an independent agency of the United States government of salary or any contribution to or supplementation of salary from any source other than the United States as compensation for services as an employee of the United States. *United States v. Raborn,* 575 F.2d 688, 691–92 (9th Cir.1978).

Denlinger's argument does not discuss scienter but rather sets forth the *actus reus* of the crime of supplementing a government employee's salary. Since Denlinger does not claim, and it is unlikely, that a Section 209 offense is a strict liability crime, *see United States v. Boeing Co.,* 845 F.2d 476, 480 (4th Cir.1988) *and* 41 Op. Att'y Gen'l (May 31 1955) (determining whether payment to officer or employee was made as compensation under section 209 requires ascertaining the intent of both payer and payee), and since Denlinger does not discuss the level of *mens rea* required for conviction under that statute, we must draw the inference in favor of Wedtech that the conviction pleaded in paragraph 28 requires sufficient scienter to satisfy section 720. At trial, Wedtech will bear the burden of proving that the scienter required for Section 209 is equal to that required for Section 720.

### B

■ Denlinger's argument that Wedtech's Amended Complaint must be dismissed for failing to name as a defendant an officer or director of Wedtech is untenable. In *Nofziger,* we disposed of the argument by stating:

Defendants' contention that section 720 authorizes a claim for relief only against Wedtech's officers and directors misconceives the scope of section 720. While section 720 explicitly sanctions actions against corporate directors and officers, section 720(a) also expressly allows recovery against the transferee of misappropriated corporate assets. Furthermore, section 720 has consistently been construed broadly to allow for claims for relief solely against the transferees of the unlawfully conveyed assets.... [T]he Second Claim [has] held that section 720 impose[s] liability not only on the officers and directors of a corporation, "but also on 'the actual recipient of money wrongfully withdrawn from the corporation.' "

88 B.R. at 624 (citations omitted). Denlinger requests reconsideration of this holding, but has cited no authority requiring a dif-

ferent result. The cases cited by Denlinger in alleged support of its argument all hold that a transferee may be sued in addition to a director or officer, but do not hold that the transferee cannot be sued alone. *See Henry v. First Nat'l Bank of Ardsley,* 110 N.Y.S.2d 115, 123 (Sup.Ct. Westchester Co.1951) (defendant transferee "also is liable" as knowing recipient under Section 60, predecessor section to Section 720); *Katz v. Braz,* 188 Misc. 581, 66 N.Y.S.2d 722, 723 (Sup.Ct.N.Y.Co.1946) (Section 60, predecessor to section 720, not intended to preclude suit against transferees), *aff'd,* 271 A.D. 970, 69 N.Y.S.2d 324 (1st Dep't 1947); *Schwartz v. Kahn,* 183 Misc. 252, 50 N.Y. S.2d 931, 935 (Sup.Ct.N.Y.Co.1944) ("It is true that section 60 relates to actions against directors and officers, but it is also true that third parties may be and frequently are joined as parties defendant in actions brought under that section"). *See also First 1958 Fund, Ltd. v. Kung,* 250 F.Supp. 744, 749 (S.D.N.Y.1966) (Weinfeld, J.) (anyone who knowingly joins or engages in an enterprise whereby a violation of a fiduciary obligation occurs is *jointly and severally liable* with the miscreant fiduciary) (emphasis added); *Gerdes v. Reynolds,* 28 N.Y.S.2d 622, 661 (Sup.Ct.N.Y.Co. 1941) ("the liability of [knowing] participants in breaches of trust [under Section 720's predecessor statute] is *joint and several* [and] each is treated as if he were the recipient of the entire sum of the liability of all the participants") (emphasis added). Accordingly, Denlinger's contention that failure to join a director or officer is fatal to the Amended Complaint is without merit.[5]

### C

■ Similarly, Denlinger's argument that the Amended Complaint must fall be-

cause of its failure to plead the existence of a creditor at the time of the alleged transfers who could have voided the conveyance is also of little significance and also has been resolved in our prior *Wedtech* opinion. *See* 88 B.R. at 622–23. Denlinger tries to circumvent the express language in Section 720 authorizing suits by trustees in bankruptcy by arguing that although "[i]t is true that a trustee in bankruptcy has standing to sue in a plenary action in a New York *state court* under § 720 . . ., it is also true that, for a trustee in bankruptcy (or debtor in possession) to sue in a Federal bankruptcy court under § 544(b), he must comply with the standing requirements and limitations of § 544(b)."[6] Defendant's Memorandum in Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss the Amended Complaint 10.

It is well-settled that section 544(b) does not provide the trustee with any independent substantive rights. *See* 4 L. King, R. D'Agostino, M. Cook, R. Mabey, A. Pedlar, H. Sommer, B. Zaretsky *Collier on Bankruptcy* ¶ 544.03 at 544–17 (15th ed. 1989). Rather, the section is simply a conduit to state law substantive remedies. Generally, a trustee invokes state law remedies which grant a creditor the right to void particular actions by a debtor. Section 720, however, is not the usual state law remedy in that it allows not only a creditor to maintain an action but explicitly authorizes a trustee in bankruptcy to bring such a suit:

(b) An action may be brought for the relief provided in this section . . . by a corporation, or a receiver, *trustee in bankruptcy,* officer, director or judgment creditor thereof. . . .

N.Y.Bus.Corp.L. § 720(b) (McKinney 1990). As a result, the trustee is not chained "like

---

5. It is significant that Denlinger has not made a motion under Rule 19(a) and (b) of the Federal Rules of Civil Procedure to dismiss the Amended Complaint for not joining a necessary and indispensable party. Under that rule, such a motion is generally not granted where liability is several with that of the unnamed party. 7 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1623 (2d ed. 1986). *See also Gerdes,* 28 N.Y.S.2d at 661–62 (violation of section 720's predecessor statute creates joint and several liability).

6. Section 544(b) provides:

The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C.A. § 544(b) (1990).

Prometheus bound", see *Collier* ¶ 544.03 at 544–17, to the rights of creditors under state law, but rather is given, by Section 720, an independent right to sue in its own name for the benefit of the debtor's estate and creditors. *See In re Lico Mfg. Co.*, 201 F.Supp. 899, 903 (D.Conn.), *aff'd*, 323 F.2d 871 (2d Cir.1963); *Nofziger*, 88 B.R. at 623 (only in situations where applicable state law does not afford standing to a trustee in bankruptcy but limits it to a creditor in existence at the time of the transaction must the trustee plead such a creditor's existence).

Research has revealed two New York cases holding that a trustee in bankruptcy must plead the existence of an unsecured creditor at the time of the alleged unlawful transaction in order to state a legally sufficient complaint. *Lummis v. Crosby*, 176 A.D. 315, 162 N.Y.S. 444 (2d Dep't 1916); *Lummis v. Crosby*, 181 A.D. 884, 167 N.Y.S. 1111 (2d Dep't 1917) (mem.), *aff'd mem.*, 224 N.Y. 611, 121 N.E. 876 (1918); *Garrison v. Pope*, 130 Misc. 290, 223 N.Y.S. 737 (Sup.Ct.N.Y.Co.1927). The value of these cases is negated, however, by their pre-dating of the legislature's introduction of the phrase "trustee in bankruptcy" into Section 720(b)'s predecessor statute, N.Y.Gen.Corp.L. § 61. *See General Laws of New York*, Gen.Corp.L. § 61 (West 1929) ("An action may be brought for the relief prescribed in the last section, by the attorney-general in behalf of the people of the state, or by *the corporation* or a creditor, *receiver or trustee in bankruptcy thereof, . . . .*") (emphasis in original and indicating new language). No binding authority, since the introduction of the pertinent language into Section 720 in 1929, has been cited to us holding that a trustee in bankruptcy still must look to the existence of a creditor in order to sue under Section 720.[7] Accordingly, we are not prepared to restrict rights bestowed upon a trustee by the New York legislature in order to make Section 720 congruent with the majority of state statutes applicable in bankruptcy through section 544(b) which give standing only to creditors but not trustees in their own right. No sound basis exists for giving Section 720 a narrower scope than the breadth of its clear language. Wedtech, as a debtor in possession, has the status of a trustee, *see* 11 U.S.C. § 1107, and, therefore, satisfies the standing requirements of Section 720.

### D

■ Denlinger's remaining arguments are not weighty and may be disposed of in succession in this final section.

Denlinger frivolously asserts that the Amended Complaint must be dismissed because Wedtech failed to recite the date and year of the events in question so as to meet its burden of satisfying the statute of limitations. Under both federal and applicable state law, the statute of limitations is an affirmative defense and not part of the plaintiff's cause of action. *See Richards v. Mileski*, 662 F.2d 65, 73 (D.C.Cir.1981) (reversing district court's dismissal of complaint where defendant did not affirmatively plead statute of limitations defense but raised it on motion to dismiss); Fed.R. Civ.P. 8(c); *Kracke v. Western World Ins. Co.*, 121 A.D.2d 692, 503 N.Y.S.2d 1012, 1013 (2d Dep't 1986); *Doyon v. Bascom*, 38 A.D.2d 645, 326 N.Y.S.2d 896, 898 (3d Dep't 1971); *Coriale v. Mercurio*, 25 A.D.2d 810, 270 N.Y.S.2d 190, 192 (4th Dep't 1966); *Mead v. Warner Pruyn Div., Finch Pruyn Sales Inc.*, 87 Misc.2d 782, 386 N.Y.S.2d 342, 345 (Sup.Ct.Wash.Co.1976); 75 N.Y. Jur.2d *Limitations and Laches* § 322 (1989) [hereinafter *Limitations*]. As an

---

7. Denlinger cites *Pirrone v. Toboroff (In re Vaniman Int'l, Inc.)*, 22 B.R. 166 (Bankr.E.D.N.Y. 1982), for the proposition that a trustee in bankruptcy must allege the existence of a creditor at the time of the transaction in order to maintain an action under Section 720. 22 B.R. at 189–90. The bankruptcy court's finding, however, was surplusage in that it had already found the complaint defective for failing to allege any unlawful conveyance as required by Section 720.

Moreover, the *Vaniman* court reached its conclusion that an unsecured creditor must be alleged solely on the basis of the continued vitality of the *Lummis* and *Garrison* decisions. As discussed in the text, the two allegedly dispositive New York decisions did not interpret the same statutory language at issue here and cannot be said to mandate the result Denlinger requests.

affirmative defense, the statute of limitations is not a condition precedent and, consequently, a plaintiff is not required to plead and prove compliance with the statute. *See O'Connell Electric Co. v. Village of Macedon,* 197 Misc. 22, 93 N.Y.S.2d 901, 903 (Sup.Ct. Monroe Co.1949); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1276 (2d ed. 1990); *Limitations* § 322 (1989). Until affirmatively pleaded, the defense is not properly before the court and a complaint cannot be dismissed as time-barred. *See In re Jackson Lockdown/MCO Cases,* 568 F.Supp. 869, 886 (E.D.Mich.1983) (statute of limitations is an affirmative defense and not proper basis for 12(b)(6) motion). *Accord* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1277 (2d ed. 1990); *Limitations* § 322 (1989).

These authorities establish that Denlinger's contention that Wedtech must plead dates sufficient to satisfy the applicable statute of limitation is frivolous. Moreover, as to the Second Claim, Denlinger suffered a conviction as a result of the transaction described and therefore cannot deny having knowledge of the relevant date. Knowing the date of the crimes for which he pleaded guilty, Denlinger certainly can calculate whether the time for commencing a civil lawsuit has expired and, if applicable, could plead the statute of limitations as an affirmative defense.

■ Denlinger's argument that the Amended Complaint must allege harm to the creditors is also without merit. Denlinger reads *Pirrone v. Toboroff (In re Vaniman Int'l, Inc.),* 22 B.R. 166 (Bankr. E.D.N.Y.1982), as requiring an allegation of harm to creditors in order to maintain a section 720 cause of action. 22 B.R. at 190. *Vaniman* simply stands for the well-settled proposition that without an unlawful conveyance there can be no Section 720 recovery. The court in *Vaniman* pointed out that while moral opprobium may attach to the practice of commercial bribery being attacked by the trustee, no section 720 relief was available because the act was

not unlawful. *Id.* The court further stated that it was not even clear that creditors were harmed by the bribery tactics because it secured much needed business. *Id.*

On the other hand, this case is quite different: even were creditors not immediately harmed, and it appears unrefutable that they were, by Wedtech's transfer of $10,000 to Denlinger coupled with its allegedly unauthorized retainer by Denlinger after Salvidar refused to accept the money, the transaction would still be voidable by the trustee because the acts in question were unlawful and indeed resulted in Denlinger's conviction. *See Vaniman* 22 B.R. at 190 n. 16 (it was not the bribery per se in *Leasing Consultants* which gave a right of recovery under Section 720 to the trustee in bankruptcy against the recipient of the bribe, but the fact that the payments were made in furtherance of a criminal conspiracy to violate 18 U.S.C. § 203). The Second Claim thus survives Denlinger's motion to dismiss because the acts complained of are alleged to have been criminal and thus *a fortiori* unlawful.[8]

For the foregoing reasons, Defendant's motion to dismiss must be granted as to Wedtech's First Claim, but denied as to Wedtech's Second Claim. Movant to

SETTLE ORDER.

---

**8.** Denlinger also argues that section 544(a) is plainly inapplicable to Wedtech's cause of action. Wedtech's Amended Complaint, however, is not grounded on section 544(a).